## McDaniel v. Commonwealth.

(Decided Jan. 10, 1933.)

ROSS & ROSS and L. C. LITTLE for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Frank McDaniel was jointly indicted with Tom Baker and others by the grand jury of Clay county for the murder of C. P. Stivers and on separate trial was by verdict and judgment found guilty and his punishment fixed at imprisonment for life. He has appealed.

When the case was called for trial, appellant, in conformity with section 1096, Kentucky Statutes, made application for change of venue by filing his verified petition supported by affidavits of two witnesses. Whereupon the commonwealth filed the affidavits of three witnesses controverting the grounds relied on by appellant. After hearing evidence of witnesses for respective parties, the court denied the application, and appellant is insisting that this was reversible error.

In the petition for change of venue it is alleged, in substance, that such a state of lawlessness existed in Clay county and in the city of Manchester, the county seat, and such bias and prejudice against appellant that he could not have a fair trial in that county and further that citizens of Manchester and particularly persons interested in the prosecution had gone about armed and had intimidated and not permitted his friends to come to Manchester or to the county jail where he was incarcerated without the great danger of loss of their lives; that by reason of the acts and conduct of those interested in prosecuting him, public sentiment had been so crystallized as to create universal bias and prejudice against him in Clay county. One of the supporting affidavits made by Dewey Baker merely states that the affiant believes the statements in the petition to be true. The other, made by Frank H. Baker, commonwealth's attorney, sets out at great length particular acts of lawlessness and the general state of lawlessness existing in Clay county. It further indicates that theretofore affiant had left and remained away from Clay county and was not attending court and discharging the duties of his office because of the state of lawlessness and because of warnings by friends that it would be unsafe for him to be in Manchester. He gave as his

opinion that appellant could not have a fair trial in Clay county.

In opposition to the application, the commonwealth filed the joint affidavit of B. L. Hacker and John B. Lucas, police judge of Manchester. In their affidavit it is stated that Frank H. Baker was not a resident of Clay county but resided at London in Laurel county, and, while neither Frank H. Baker nor Dewey Baker are related to appellant, they are both closely related to Tom Baker and Oakley Baker who were jointly indicted with him; that they had resided in and near Manchester for over 20 years and had a general acquaintance in the county and knew the sentiment, feeling, and expression of the people of the city and county; that there was no expression or feeling of bias or prejudice against appellant; and that they believed he could have a fair and impartial trial in Clay county. They further stated that they had read the statements as to the lawless condition and acts of lawlessness referred to in the affidavit of Frank H. Baker and that they were all personal to him and had no connection with appellant or with the case against him. The other affidavit filed by the commonwealth in opposition to the application was that of A. S. Ladford who had formerly served a term as sheriff of Clay county. He stated that he was well acquainted with the people living in the town and throughout the county; that he had carefully read the joint affidavit of Lucas and Hacker; that the statements therein contained were personally known to him to be true; and that he adopted and made same a part of his affidavit as if copied therein.

Of the six witnesses introduced by appellant on the hearing of the application, D. R. Garrison merely testified as to guards being appointed by the court. Neither D. H. Hornsby, D. W. Burns, nor Stephen Hacker stated that appellant could not have a fair trial in Clay county, their evidence merely indicating that they did not know whether or not he could have such a trial. T. C. McDaniel and John M. Quinn did testify that appellant could not have a fair and impartial trial in Clay county, but the former is a relative of appellant and there is evidence for the commonwealth that Quinn is a drug addict, and a number of prominent citizens of the county testified that his reputation for truth and veracity as well as for morality was bad.

J. M. Lyttle, county judge of Clay county, and Lucas, judge of the police court, Drs. Porter, Anderson and Ricketts, and Roy R. White were called by the commonwealth on the hearing. They are all men of prominence and widely acquainted in the county and their evidence clearly indicates that there was no such feeling of bias or prejudice against appellant as would preclude him having a fair and impartial trial in Clay county. It appears by affidavit and by the evidence of witnesses on the hearing that the court had appointed guards to patrol the streets of the town and premises surrounding the courthouse and jail and to search persons entering the courthouse to see that they carried no arms. There is no evidence of threats or manifestations of violence toward appellant after he was placed in jail or during the trial of his case, and there is nothing in the record to indicate that the guards were ever in the courtroom or that their presence or activities created any atmosphere unfavorable to appellant. It further appears from the record that all the members of the jury were selected from a special venire summoned from Knox county.

When counteraffidavits were filed by the commonwealth controverting the statements of the petition for change of venue and affidavits in support thereof, an issue was made, the determination of which was a matter addressed to the discretion of the trial judge. His denial of the application should not be disturbed unless it is affirmatively made to appear that he abused that discretion. Vaughn v. Commonwealth, 204 Ky. 229, 263 S. W. 752; Hannah v. Commonwealth, 242 Ky. 220, 46 S. W. (2d) 121; Hall v. Commonwealth, 207 Ky. 718, 270 S. W. 5; Holmes v. Commonwealth, 241 Ky. 573, 44 S. W. (2d) 592.

In the case of Heck v. Commonwealth, 163 Ky. 518, 174 S. W. 19, 20, this court, in disposing of a similar question, said:

"The judge of the trial court, in deciding upon such a motion, has a sound discretion, and has better opportunity of properly estimating the conditions which exist in the community where he is then engaged in holding court, a better acquaintance with the witnesses, and is able to know better what weight to give their evidence, than we can possibly know."

A consideration of the evidence on the hearing and the record as a whole leaves no doubt as to the correctness of the trial court's ruling.

The affidavits of appellant and his counsel in support of his motion for continuance reiterates much of the matter contained in the petition for change of venue and further assert that appellant had not had time to confer with counsel and with witnesses to prepare his defense and that, because of the armed men about the courthouse and the sentiment and feeling against him, he had not had opportunity to see or advise with relatives and friends; that at the time the homicide was committed he was in Madison county, and, if given time, could procure the presence of witnesses who would so testify.

If appellant was in Madison county at the time the homicide was committed and was seen by witnesses, then he must have known who these witnesses were, yet he failed to name a single witness who saw him or who would testify that he was in Madison county at that time and his affidavit discloses that he had failed to cause subpoena to issue for any witness.

One of the grounds in appellant's motion for new trial is newly discovered evidence, and, in support of that ground, he filed the affidavit of Mark Ambrose, a barber, at Berea in Madison county, wherein the affiant stated that he had never been personally acquainted with appellant but that about 9 o'clock on Saturday, April 16, 1932, he shaved and cut the hair of a man said to be Frank McDaniel and that he heard him spoken of by that name. This is the nearest appellant comes to making it appear in his motion for continuance or elsewhere in the entire record that he was deprived of the evidence of any witness who could testify to anything material to his defense.

In opposition to the motion for continuance the commonwealth filed the affidavit of the deputy jailer of Clay county who was actively in charge of the jail and the prisoners confined therein. He stated that an uncle of appellant and another person who accompanied him were the only persons who had requested to see or to talk with him and that they were shown every courtesy and permitted to see and talk with appellant at two different times. He further stated that appellant had been brought out of jail to consult with his attorneys on

every occasion when they desired or requested the opportunity to consult with him and whenever appellant requested the opportunity to consult with his attorneys; that no request of any person to see or talk with appellant and no request of appellant to see or talk with others had been refused or denied.

It has been uniformly held by this court that the granting or refusing a continuance is a matter within the discretion of the trial court and such discretion will not be interfered with unless it is clearly made to appear that it has been abused. Brandriff v. Commonwealth, 227 Ky. 389, 13 S. W. (2d) 273; Jamerson v. Commonwealth, 230 Ky. 704, 20 S. W. (2d) 711; Holmes v. Commonwealth, supra.

This court has consistently recognized that the right of one standing accused of a crime to be represented by counsel carries with it the right of himself and counsel to have reasonable time to prepare for trial. But there is no showing here that delay would have been of any advantage to appellant or to his counsel in preparation of his defense, and in the absence of such showing, it is manifest that the court did not err in overruling the motion for continuance.

The court sustained a motion of the commonwealth to have the jury view an automobile in the courthouse yard and also the place where the homicide occurred and points nearby about which there was evidence. No objection was interposed by appellant, but, on the other hand, his counsel entered a motion that, while the jury was making such inspection, the distance between certain points mentioned in evidence be measured. This motion was also sustained. The measurement was made in the presence of the jury as requested. On this tour of inspection the court in the presence of the jury, and of appellant and counsel for both sides, pointed out certain things and places referred to in the evidence and finally asked counsel for both the commonwealth and appellant if there was anything further, to which they replied in the negative. No objection or exception was made to anything done or said on this trip of inspection until it was over. Then appellant's counsel without stating any grounds or reasons therefor moved the court to set aside the swearing of the jury and continue the case, and they now insist that the statements

694

made by the court in the presence of the jury were prejudicial and constitute grounds for reversal.

Section 236 of the Criminal Code of Practice authorizes the court to have the jury view the place where an offense is charged to have been committed. In this instance there was a substantial compliance with the provision of that section, but even if it be granted that it was not strictly complied with, an examination of the record clearly reveals that nothing was done or said to prejudice any right of the accused.

Finding no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.